**SO ORDERED.**

**SIGNED this 16 day of May, 2014.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

ROBERT R. AMERSON,                                    CHAPTER 11
SUE H. AMERSON,                                           CASE NO. 12-03716-8-RDD

      DEBTORS.

## ORDER

Pending before the Court is the Motion to Impose Sanctions for Violation of Confirmation Injunction (11 U.S.C. § 1141(a)) (the "Motion for Sanctions") filed by Robert R. Amerson ("Amerson") on February 11, 2014, the Memorandum of Law in Support of Motion filed by Amerson on March 27, 2014, the Response to Motion for Sanctions filed by Flanders/Precisionaire Corporation and Flanders Corporation (collectively referred to herein as "Flanders" unless individually identified) on February 20, 2014 and the Omnibus Response to Flanders' February 20 Pleading filed by the Bank of New York Mellon Trust Company, National Association (F/K/A The Bank of New York Trust Company, National Association), As Trustee for Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ14 ("Bank of NY Mellon"). The Court conducted a hearing on May 6, 2014, in Greenville, North Carolina to consider the Motion for Sanctions and the responses.

## BACKGROUND

On January 15, 2014 and January 16, 2014, Flanders commenced litigation by filing complaints against Robert R. Amerson ("Amerson"), Bank of NY Mellon, Wal-Pat II, LLC, ACPM Operations, LLC, and Steven K. Clark (the "Defendants") in the North Carolina Superior Courts for Bladen County and Johnston County, Case Numbers 14-CVS-18 and 14-CVS-152, respectively (the "Litigation"). The complaints in each action are essentially identical, containing 372 numbered paragraphs and thirteen distinct claims for relief, many of them alternative claims (the "Complaints"). Only three of those claims, the Ninth, Tenth, and Eleventh Claims for Relief[1], seek relief against Amerson (collectively, the "Amerson Claims"). On February 6, 2014, Amerson filed a Notice of Removal of State Court Action to the United States Bankruptcy Court (the "Notice of Removal"). Amerson's Notice of Removal related to all of the claims set forth in the Complaints, not just the Amerson Claims. Upon the filing of the Notice of Removal, the pending actions were removed to the Bankruptcy Court's docket and assigned Adversary Proceeding numbers 14-00020-8-RDD and 14-00022-8-RDD.

---

[1] **Ninth Claim for Relief:** In the alternative, and in the event that the Court determines that Flanders owes any amount under the Leases, then Flanders seeks contribution and/or indemnity against Wal-Pat, Amerson, and Clark because any amount which Flanders pays to Bank of NY under the Leases will reduce, dollar for dollar, the obligations of Wal-Pat, Amerson, and Clark to Bank of NY, on which they have paid nothing.

**Tenth Claim for Relief:** Flanders asserts that Bank of NY, Amerson, and Wal-Pat entered into an agreement whereby those parties would focus solely on recovering the entire balance of the Loan from Flanders while Amerson would be required to pay nothing on account of his obligation to Bank of NY for the entire balance of the Loan. That agreement is evidenced by the language in Amerson's Plan of Reorganization wherein Bank of NY defers its claims against Amerson, statements made at the confirmation hearing that Amerson was to be used as a tool to recover money, rather than as a source of money, and Bank of NY's actions in promptly thereafter demanding more than $4,400,000.00 in alleged past due rents from Flanders.

**Eleventh Claim for Relief:** Flanders asserts that the actions of Bank of NY, Amerson, and Wal-Pat constitute tortious interference with contract where Bank of NY demands that Flanders pay rent nearly double the amount which Flanders has paid for the prior five (5) years pursuant to its contract with Wal-Pat and where Amerson has offered testimony which is directly contrary to the terms of the agreements he entered into with Flanders on behalf of Wal-Pat.

On April 7, 2014, this Court entered an order remanding the ten non-core claims, consisting of the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Twelfth and Thirteenth Claims for Relief to the North Carolina Business Court, the Honorable John R. Jolly, Jr., Judge Presiding.

Robert R. Amerson and Sue H. Amerson (the "Debtors") filed a petition for relief under Chapter 11 of the Bankruptcy Code on May 16, 2012. On August 3, 2012, counsel for the Debtors mailed correspondence to Flanders addressing the leases between Flanders and Wal Pat II, LLC ("Wal Pat"). On August 6, 2012, the Debtors filed an amendment to their bankruptcy schedules adding Flanders as a creditor, classifying the claim as contingent and disputed. The claims bar date in the Debtors' bankruptcy case was September 24, 2012 and the Debtors' Second Amended Chapter 11 Plan of Reorganization ("Second Amended Plan") was confirmed on September 17, 2013.

Flanders had knowledge that the Debtors had filed for bankruptcy protection on May 16, 2012. Flanders and their attorneys reviewed the Debtors' proposed chapter 11 plans of reorganization. Prior to the petition date in 2010, Flanders questioned the propriety of the lease arrangements with Wal Pat. At this point in 2010, the new principal officers, Board of Directors, and stockholders, must have questioned whether some claim lay against Amerson in favor of Flanders for corporate malfeasance, insider dealing, or even piercing the liability veil of Wal Pat.

On January 22, 2014 and January 30, 2014, Debtors' counsel advised Flanders' counsel in writing of the Debtors' concerns regarding the filing of the Litigation and the implications of the confirmation injunction. The correspondence stated that Flanders had been added as a potential creditor on August 6, 2012 and that Flanders received notice prior to the expiration of the claims deadline that it was being classified as the holder of a contingent and disputed claim. In fact, at this point the automatic stay was still in effect, as the Debtors' discharge had not yet been entered.

3

Despite having received notice of the bankruptcy filing and notice of the proof of claims deadline well before the expiration of the deadline and approximately thirteen months prior to confirmation of the Debtors' Second Amended Plan, Flanders did not take any action in the bankruptcy proceeding to request relief from the automatic stay or to file a proof of claim. Flanders was represented by its current counsel for much of the Debtors' Chapter 11 bankruptcy proceeding. Flanders was well aware of its obligations and had direct knowledge of the interactions between Amerson and the Bank of NY Mellon. Flanders' counsel even attended the Rule 2004 examination of Amerson conducted by the Bank of NY Mellon.

As a result, well before the confirmation of the Debtors' Second Amended Plan, Flanders knew that its exposure to the Bank of NY Mellon had been initiated by Flanders' prepetition modifications of the leases and ongoing breach of its duties to the Bank of NY Mellon under the Subordination and Non-Disturbance agreements. As early as September 2012, Flanders was making direct, postpetition threats to Amerson indicating the company's intent was to seek a judgment against Amerson for issues arising from the Flanders/Wal-Pat leases and related transactions. Therefore, Flanders had a clear responsibility to assert and preserve any claim for "contribution" or indemnity arising from these transactions, even if contingent and unliquidated, during the bankruptcy proceeding.

Amerson filed the Motion for Sanctions on February 28, 2014. In response, on March 28, 2014, Flanders filed a motion to dismiss the Ninth, Tenth, and Eleventh Causes of Action as to Amerson in the pending Adversary Proceedings with assigned Adversary Proceeding Numbers: 14-00022-8-RDD and 14-00020-8-RDD. The Motion for Sanctions seeks sanctions for the willful failure of Flanders to comply with the Court's order confirming the Debtors' Second Amended Plan

4

entered on September 17, 2013. However, because the Debtors' case involved individual debtors, the discharge was not entered at the time of confirmation, and the Debtors did not request an early discharge. *See In re Sheridan*, 391 B.R. 287, 290 (Bankr. E.D.N.C. July 18, 2008) (noting that the general rule in a chapter 11 case involving individuals is that the discharge will not be entered until the debtor has made all plan payments). Therefore the automatic stay remains in effect pursuant to 11 U.S.C. § 362(c)(2) until the case is closed, or until the discharge is entered; neither of which has occurred in this case. Accordingly, the motion will be considered as one requesting sanctions for violation of the automatic stay pursuant to 11 U.S.C. § 362(c)(2) and not as one requesting sanctions for violation of the discharge injunction. At the hearing, Counsel for Amerson requested that the Court consider the Motion for Sanctions as one for sanctions for violation of the automatic stay.

Based on the evidence, it appears to the Court that the only violation for which sanctions may be imposed is a violation of the automatic stay. The discharge injunction has not yet been entered as payments are not yet completed under the Second Amended Plan. There could possibly be a violation of the order confirming the Second Amended Plan, but Flanders did not receive treatment under the Second Amended Plan, so such an alleged violation would be specious. Accordingly, the only sanctionable violation is one for violation of the automatic stay.

Section 362(a) of the Bankruptcy Code imposes a stay on "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of a case under" title 11. 11 U.S.C. § 362 (a)(6). The Bankruptcy Code also provides that any "individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362 (k)(1).

This Court has held "willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *Lofton v. Carolina Fin. LLC (In re Lofton)*, 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008) (citing *Citizens Bank v. Strumpf*, 37 F.3d 155 (4th Cir.1994), *rev'd on other grounds* 516 U.S. 16, 11 (1995)). Furthermore, "[i]f the creditor intentionally acts and its actions violate the automatic stay, the creditor's acts are willful." *In re Jones*, No. 06-00380-8-RDD, at 3 (Bankr. E.D.N.C. June 27, 2007).

As stated above, Flanders was added as a creditor on August 6, 2012. Flanders never filed a proof of claim and went to considerable lengths and evaluation before including Amerson as a defendant in the Ninth, Tenth, and Eleventh Causes of Action. When Flanders encountered strong resistance by Amerson, it filed a motion for voluntary dismissal as to the Ninth, Tenth, and Eleventh causes of action against Amerson in the Adversary Proceedings. What would have been the more prudent path for Flanders would have been to file a motion to lift the automatic stay prior to filing the Litigation as a precaution. Flanders should have been on precautionary notice prior to filing the Litigation as it participated in the bankruptcy case by attending a Rule 2004 examination of Amerson, and was added as a creditor with a contingent claim on August 6, 2012.

The Court finds the Debtors have proven that Flanders willfully violated § 362 by a preponderance of the evidence by filing the Litigation in Bladen and Johnston counties on January 15, 2014 and January 16, 2014, respectively.

Upon finding willful violations of the automatic stay, the Court may award actual damages, which include monetary damages. *See In re Thorpe*, No. 2011 WL 5909403 at *2 (Bankr. E.D.N.C. May 17, 2011); *In re Kirkbride*, 2010 WL 4809334 at *5 (Bankr. E.D.N.C. Nov. 19, 2010); *Dawson v. Wash. Mut. Bank (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004). Attorneys fees and costs

are actual damages. The Court may also award punitive damages for a willful violation of the automatic stay for the purpose of causing "'a change in the creditor's behavior . . . .'" *In re Sands*, No. 10-12205C-13G, 2011 WL 3962491 at *3 (Bankr. M.D.N.C. April 1, 2011) (quoting *In re Shade*, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001)). No facts support an award of punitive damages.

The damages have been mitigated by Flanders' filing on March 28, 2014, a motion for voluntary dismissal of the Ninth, Tenth and Eleventh causes of action as to Amerson. As a result, Amerson is entitled to recover and shall recover actual damages which are his attorneys' fees and costs after January 15, 2014 for the defense of the Litigation and the Motion for Sanctions. Flanders shall pay to Amerson his actual damages which equal the sum of $35,576.64 for Amerson's attorneys fees and costs associated with the defense of the Litigation and prosecution of the Motion for Sanctions. Therefore, Amerson's Motion for Sanctions for willful violation of the automatic stay is **GRANTED.**

**SO ORDERED.**

**END OF DOCUMENT**